# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 98-60363
Summary Calendar

HALTER MARINE, INC.;
FRANK GATES SERVICE COMPANY,

Petitioners,

versus

DIRECTOR, OFFICE OF WORKER'S COMPENSATION
PROGRAMS, U.S. DEPARTMENT OF LABOR;
FREDDIE KNIGHT,

Respondents.

Petition for review of an Order
of the Benefits Review Board
(97-977)

June 11, 1999

Before POLITZ, EMILIO M. GARZA, and DeMOSS, Circuit Judges.

POLITZ, Circuit Judge:[*]

Halter Marine, Inc. seeks review of the United States Department of Labor's

Benefits Review Board's affirmation of an order of an administrative law judge

under the Longshore and Harbor Workers' Compensation Act.[1]  For the reasons

assigned, we affirm.

---

[*]Pursuant to 5ᵀᴴ Cɪʀ. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ Cɪʀ. R. 47.5.4.

[1]33 U.S.C. § 901 **et seq.**

## BACKGROUND

Freddie Knight was employed as a crane foreman at Halter until September 17, 1991, when he suffered an on-the-job back injury. Knight was referred to Dr. Donald Judice, a company physician. Although Knight complained of continuing pain, Dr. Judice released him from care in May 1992, opining that Knight could work without restrictions. Knight then consulted his family physician, Dr. Peter Rhymes, who ultimately declared Knight to be unfit for work. Knight sought temporary total disability benefits from September 17, 1991 to May 1992 and permanent total disability benefits thereafter; he also requested medical benefits for all treatment subsequent to May 1992 and attorney's fees. With some minor modification in dates, the ALJ granted the relief sought by Knight, finding (1) that Knight made out a prima facie case of permanent and total disability; (2) that Halter failed to provide evidence of suitable alternative employment; and (3) that Halter refused medical treatment to Knight after May 1992.

After the matter had been referred to the Office of Administrative Law Judges, Halter requested Special Fund relief under Section 8(f).[2] The ALJ dismissed the application, holding that it was (1) untimely and (2) insufficiently documented.[3]

The BRB affirmed in all respects and, from this adverse ruling, Halter appeals.

---

[2]33 U.S.C. § 908(f).

[3]**See** 20 C.F.R. § 702.321(b).

**ANALYSIS**

"In reviewing BRB decisions, . . . [we] are limited to considering errors of law" and ensuring that "the ALJ's findings of fact are supported by substantial evidence."[4]

First, Halter contends that the ALJ erred in finding that Knight established a prima facie case of total and permanent disability. Halter contends that all of the physicians Knight consulted, including Dr. Rhymes, agreed that Knight is capable of performing light duty work and attributed Knight's work-related restrictions to a pre-existing degenerative disc disease.

The BRB found that Halter waived the latter argument and, while Halter continues to press that argument on appeal, it does not contest the BRB's conclusion that Halter failed to raise the causation issue before the ALJ. We decline to address that argument.

Halter's other contention of error is not persuasive. The determination by Knight's physicians that he is capable of performing light duty work does not, ipso facto, preclude a finding of total and permanent disability. Rather, the question is whether Knight established a prima facie case of total and permanent disability by "demonstrating that he is unable to perform his former longshore employment tasks because of a job-related injury."[5] Substantial evidence supports the ALJ's factual finding that Knight -- relying on the testimony of his physicians, as well as his own

---

[4]**New Orleans (Gulfwide) Stevedores v. Turner**, 661 F.2d 1031, 1037 (5th Cir. Unit A Nov. 1981).

[5]**See Louisiana Ins. Guaranty Ass'n v. Abbott**, 40 F.3d 122, 127 (5th Cir. 1994).

testimony -- did so.[6]

Thus, the burden shifted to Halter "to establish that the employee is capable of performing other realistically available jobs."[7]  Halter urges that it satisfied this burden by: (1) tendering an offer of employment to Knight in May 1992; (2) providing him a job tailored to his condition in 1994; and (3) offering the testimony of a vocational expert who identified a number of available jobs.

The ALJ found that Halter did not in fact make a job offer to Knight in 1992; this finding rests on a pure credibility assessment, and we have no basis upon which to disturb the ALJ's resolution of conflicting testimony.  With respect to the 1994 job, Knight offered evidence that the job was not suitable, and the ALJ credited his account.  Again, Halter merely offers a competing characterization of the evidence in the record, but it has not provided grounds upon which we appropriately could overturn the factual findings of the ALJ.  Finally, irrespective of any errors the ALJ committed in evaluating the testimony of the vocational expert, the ALJ's ultimate conclusion -- that the jobs identified by the expert required Knight to perform tasks inconsistent with the restrictions placed on him by his physicians -- is supported by substantial evidence in the record.

Halter next contends that the ALJ erred in determining that it refused Knight medical treatment after May 1992.  It is uncontested that Dr. Judice released

---

[6]We decline Halter's invitation to second guess the ALJ's credibility assessment with respect to Knight's testimony that his prior job tasks did not consist solely of light duty work.

[7]**Abbott**, 40 F.3d at 127.

Knight, without restrictions, in May 1992 despite Knight's claim that he suffered from continuing pain.[8] "When an employee is told by the employer's physician that 'he is recovered from his injury and requires no further treatment, he has, in effect, been refused treatment by the employer,' and is therefore entitled to reimbursement for all necessary treatment subsequently procured on his own initiative."[9] Therefore, we reject Halter's argument that it did not refuse Knight medical treatment.

Finally, relying on **Cajun Tubing Testers, Inc. v. Hargrave**,[10] Halter maintains that the ALJ erroneously concluded that its application for Special Fund relief was untimely filed. The Director, Office of Workers' Compensation Programs, counters that (1) Halter misconstrues **Cajun Tubing** which, under the Director's view, compels the conclusion that Halter's application was untimely, and (2) Halter's failure to appeal the ALJ's determination that its application was insufficiently documented requires affirmance of that decision. We need not address the latter argument, agreeing that under **Cajun Tubing** Halter's application was not timely filed. Halter should have known, before the case was referred to the

---

[8]Halter's persistent efforts to disparage Knight's back pain as merely "subjective" or "exaggerated" are not well-taken. Halter points to no credible evidence in the record of malingering, and, on the facts of this case, the company doctor's purported inability to locate "objective" explanations for Knight's pain following an undisputed injury may be an indication of the limits of medical science more than anything else.

[9]**Shahady v. Atlas Tile & Marble** Co., 682 F.2d 968, 970 (D.C. Cir. 1982) (per curiam) (quoting Atlantic **& Gulf Stevedores, Inc. v. Neuman**, 440 F.2d 908, 911 (5th Cir. 1971)).

[10]951 F.2d 72 (5th Cir. 1992).

OALJ, that permanency of disability was at issue. That is all **Cajun Tubing** requires.

AFFIRMED.